I think that was Mr. Donahue's first argument, he did a nice job, didn't he? Good morning, your honors. My name is Edward Sielko. I'm here on behalf of the plaintiffs Brad Ogunis, Kevin Collier, and Mary Alston. If it pleases the court, I'd like to reserve two of my ten minutes for rebuttal. Just to remind the court, I'll be sharing my time with Christine Cole of the Department of Justice. Despite the wide-ranging topics dealt with in the briefing, and at times esoteric topics debated by the parties, really what this appeal is about is something very straightforward. At the district court level, Judge Giles found that the plaintiffs had laid out a violation of Section 2607 of RESPA. The judge had found that if the plaintiffs did have standing and were able to go forward and prove their case, the damage would be three times the settlement service involved in the violation of RESPA here, the provision of private mortgage insurance. Indeed, the judge ruled that the lower court level, and again as an alternative ground here, was not a bar to the claims that the plaintiffs set forth. What the judge did do is said that the plaintiffs here, because of the rates that they paid for their private mortgage insurance, were set and approved by the Pennsylvania Department of Insurance, and that they couldn't allege that they were overcharged directly when purchasing that private mortgage insurance despite the fact that that provision of private mortgage insurance was tainted in plaintiff appellants view by a kickback or unearned fee split scheme with captive reinsurer by the lender that the plaintiffs were dealing with. Why was the district court wrong? Get to that, if you would, Mr. Sciolco. Why was it wrong to say you have to have some identifiable harm to your client? Your client had to have some identifiable loss, an overcharge to use the district court's words, in order for there to be a private RESPA claim? What's the flaw in that thinking? I don't think there's any basic flaw in the thinking that an individual must suffer an injury in fact under Lujan and anywhere else to be able to file suit. I don't think there was anything wrong with that basic concept. I think the judge's mistake was mistaking the findings of fact, the findings of Congress in Section 2601, where Congress sets out very explicitly that there are certain abusive practices that would lead to higher settlement service costs. That's the finding. The district court judge, Giles, mistakenly pointed to that finding in Section 2601 as the purpose of the statute, but it's quite clear that B lays out the purpose of the statute. Well, he went, Judge Giles went to the purpose of the statute, which he viewed to be unnecessarily, to prevent unnecessarily high settlement overcharges, to trump the plain meaning he had just found of the statute. He had found that the statute is, it's clear what it said, and he was correct in determining how clear it was. And then he used what he perceived, wrongly in my view, to be the purpose of the statute to prevent overcharges, to trump the plain meaning of the statute. Wouldn't you agree with that? That's correct, Your Honor. And, but Congress made an explicit choice when it enacted RESPA. Not when it enacted 1983 amendments, which are the topic of a lot of words in the brief. In 1974, they made it, Congress made an explicit choice, do I, do we regulate prices or do I regulate process? And the explicit purpose of the statute, which I agree, Judge Giles understood when framing the actual violation. He mistook the findings of fact, which would say that the, these abusive business practices have led to higher settlement, higher settlement prices. But the purpose of the statute is to have a blanket prohibition on the types of kickbacks and unearned fees that tend to raise prices over time. They also tend to limit competition in the settlement service provider industry here, private mortgage insurance. They also tend to, because in the real estate industry and the settlement services, most of the time the settlement service providers are chosen by a lender, and they're not marketed directly to the consumer. So I think Congress was very explicit that they were trying to limit prices. Price really never comes into play. RESPA is not an overcharge statute. There's no claim for, you can't claim a violation of RESPA through claiming an overcharge. You are overcharged for a service. What you can do is say, is that my settlement service provider, my lender, sent me to this primary mortgage insurer because they had an agreement with the seven largest private mortgage insurers in the country, and those private mortgage insurers agreed to reinsure. Okay, and how was your client hurt by that? My client is hurt just as all consumers are hurt by not having, being subjected to a settlement service, which is not the product of a competitive market, which is the product of an abusive business practice. Essentially, the only reason that my client was, my clients were referred to these private mortgage insurers is because these private mortgage insurers agreed to have their private mortgage insurance contracts reinsured by a wholly owned subsidiary of Countrywide. Congress has found very explicitly that that type of referral payment, a payment for no other justification other than the referral of business. If you think about it in an economic sense, over time, it's very difficult in any kickback scheme to say that this price in this particular transaction was increased because of the kickback. Any, any, any bribery statute... You can have a kickback without an overcharge. Sure. You can have a bribe without the price of whatever the provision of service that's being bribed. It's essentially what our allegation is, is that cumulatively, and the Munoz Court in the Eastern District of California says it much better than I ever will, and the Sixth Circuit's business practices increase the cost of doing business for the folks that have to pay the referral fee, pay the bribe. So we're not attacking whatever rate was filed with the private, with the State of Pennsylvania. That's their purview. What we're attacking is what Congress meant for us to attack, is that we're, my clients have a right to have settlement service providers provide them Essentially, it's, it's, it's, over time, it's, we, I can't hide from the fact that we allege that we believe that over time, private mortgage insurance rates were likely influenced and increased by the fact that the seven largest providers entered into these contracts with, with, with, not just Countrywide, there's other, there's other cases that are out there, but with, with Countrywide. And, but aside from that, the Carter Court looked at the 1983 amendments, which, which defendants do a, a, an interesting job of saying that this is really a case about what Congress meant when it amended the damages provision in 1983. I agree with my, with my, my, my colleague, Mr. Perma, in that, that is not the focus of our claim. Our focus of our claim is, is that as originally crafted, Congress made a conscious choice that people should be free from these referral practices because of the way the real estate industry. If we found, if we found that the meaning of Section 8 is clear, plain, we don't have to go into these things, legislative history, purpose, any of these other things that you, you, you have all spent so much time briefing, do we? Even the Sixth Circuit went well beyond what it had to do to decide the case. That's exactly right, Your Honor. I think the Sixth Circuit and the Munoz Court both say that you, in our opening brief, that you could stop at the statutory purpose and the prohibition section of the expression. But isn't that, isn't that the law? That if Congress's intent is clear, that's it. You go no further. That's correct, Your Honor. The only other, I see my time is out. I just wanted to make one more point before rebuttal, unless Your Honors would prefer I would. Go ahead. The one other point that, the, the one basic mischaracterization that my, my, that Mr. Perlman is likely to make is that even if you find that my clients have standing, and to me, if our clients have standing and they're harmed by the practice at issue, the file break doctrine is put aside, that they should be assumed to have a safe harbor under 2607C2, which, which is essentially if you provide a service for a payment made then nothing in this statute will find that you are violating RESPA. But he focuses on the, the payment for private mortgage insurance from our consumers, not the violative payment from the private mortgage insurance back to the wholly unsubsidiary contract. I think the safe harbor argument can be probably best summarized by just saying if a practice is legitimate, it's legitimate. I mean, that's it, really. If there's payment for services rendered, Your Honor, it's fine. If there's no services rendered, it's violative. I think that's the fairest way to say it. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. I'm Christine Cole with the Department of Justice on behalf of the United States. I'd like to begin by addressing Judge Jordan's question. You asked a couple times, how are the plaintiffs injured in this case? The, the plaintiffs are injured by the very violation that has been alleged of Section 8. The injury is the violation itself, the alleged kickback or the unearned fees. I think that is clear from the way the case is reported. Congress clearly created a legal right to a, in a consumer to have a real estate settlement that is not sullied by violations of the statute such as the prohibition against kickbacks and unearned fees. Is there a, is there a question, though, a legitimate question to be asked about whether Congress wanting to prevent consumers from suffering a system that has that kind of corruption in it and setting up a system where there is a private right of action was also, though, intending for HUD to be the, the primary enforcer and protecting, and protecting against a generalized injury that is, I'm not asking this very well, I apologize. Here it seems conceded that there isn't an overcharge. I can't point to anything Mr. Sciocco seems to say where I can say, yeah, I paid this much more. There's nothing like that in this record. It's the, the general, I ought to have a fair system to work in injury as you apparently described it. How is having a private right of action where everybody's out there enforcing that consistent with HUD performing its duties to make sure the system is fair? Well, I don't think there's any inconsistency at all, Your Honor. In fact, I think the fact that the statute in Section 8D sets up multiple remedies, multiple enforcement mechanisms by both the federal government, state government, as well as the private parties that are affected by the violations. I think that demonstrates how serious Congress regarded the prohibitions in Section 8 itself. As we point out in our brief, and as plaintiffs have pointed out in theirs, there are other provisions of RESPA, there are other things that RESPA makes illegal, but there are no private right of actions in those particular sections of the statute. But under the provision in Section 8 that prohibits these kickbacks, referral fees, fees for work where really no work has been performed, Congress viewed those as extremely serious, abusive practices throughout the nation. And for that reason, when the statute was first enacted in 1974, it had only the private right of action. It was entirely up to the individuals whose settlements were sullied by these violations to bring legal action. In 1983, Congress then added enforcement authority and gave HUD and the federal government complementary types of remedies that, again, at the risk of repeating myself, I think that really demonstrates how serious Congress viewed these kinds of violations. It's also clear that going back to the Havens line of cases that really started back with Linda R.S., Traficant, Hardin, those line of cases mentioned in Section 8, there are some that make clear that Congress can create a new category of injury, can create a legal right, the invasion of which is sufficient to establish injury for purposes of Article 3 standing. And this case fits quite comfortably within that group of case law. So I think as Judge Berry pointed out, I think it's really not necessary to go much further than the few words of Section 8D2. You don't even really need to get into the component of 8D2 that talks about what the amount of the remedy is should a plaintiff prevail. The language at the beginning of 8D2 is quite clear in that it says, any person who violates Section 8 shall be liable to the person charged for the settlement service involved in the violation. That's very concrete. It's very particularized. It goes to the individual himself who had the settlement service that was sullied by that violation. And the district court said it was clear. And the district court indeed said it was clear. Where the district court went wrong in our view was in looking into what it conceived as the purpose of the statute. But again, as the appellants have pointed out in their brief in much more detail, they do go into this legislative history, which again may not be necessary for the court to consider. But it does demonstrate that Congress was not interested in a statute that set rates and created a whole rate regulatory regime. Rather, it was aiming at these abusive practices that are sort of nationwide and situations where it's very hard to pinpoint. Let me make sure I understand your standing, your position on standing here. You have said that it's the violation itself, which is the injury. Correct? Correct, Your Honor. Yes. Now that differs from what the Sixth Circuit found the injury to be in the Carter decision. Doesn't it? I don't believe so, Your Honor. Didn't the Sixth Circuit conclude that the injury was a general harm caused to consumers and to the market due to the prohibited practices? Well, I think it was stating it in broader terms. But at the end of the day, I think this... No, I don't think it was stating it in broader terms. I think there is a difference. I mean, you took the narrow approach that the injury in fact was the violation per se. If the kickback occurred, that's the injury and anybody who purchased that service has injury in fact and therefore standing. That's correct, Your Honor. Can you support the other argument? Well, I... Can you support the other argument that says that the injury is the injury to the marketplace? Absolutely, Your Honor. Because again, when you look at what the statute is intended to do, it addresses these abusive practices. And yes, there are greater societal harms, but the key in this case that resolves the standing issue is this isn't even like an act as though they're a private attorney's general and can bring lawsuits. This lawsuit can only be brought by the person whose settlement service or settlement is affected by this violation. So it's a very... Opposing counsel takes it a step further and says that they can only bring it so long as they allege that they were injured. And one of the defects in this case was there was no allegation of overcharges. And therefore, since there's no overcharges, they weren't injured. Well, and that's where we think the apologies are quite incorrect. Again, there is nothing either constitutionally or with respect to this particular statutory language that requires an overcharge. The word overcharge appears nowhere in the statute. And again, if you look at what the purposes of RESPA are to get at these abusive practices, it makes perfect sense that a plaintiff wouldn't need to allege that he was overcharged by a fixed amount in a given transaction. Well, when you're focusing on overcharge, a non-economic harm can provide the requisite injury in fact for Article III standing, can't it? Absolutely, Your Honor. It can be non-economic. It can be indirect. And what is the... What would be the... I mean, the plaintiff... It's a rhetorical question. The plaintiff's alleged non-economic harm here, four different types of it, as I see, or three different types of non-economic harm. Well, for example, in these referral situations where a party is steered to a particular settlement service provider, you're not getting the benefit of impartial advice. You're also not getting the benefit of competition. And ultimately, competition results in lower costs. Ultimately. But let's suppose that here the referrals created volume that was such that the provider was able to charge a lower price for the mortgage insurance. Doesn't that eliminate any injury whatsoever? Not so, Your Honor. We disagree with that. Again, the injury is the violation itself. That's under your theory. Under our theory. But under the Sixth Circuit's theory, wouldn't there be a problem? I don't know that the Sixth Circuit parsed it. I would have to go back and read that. With all honesty, I don't remember reading that decision as narrowly as Your Honor does. I think the Sixth Circuit was looking at other aspects of Section 8D2. It got into the business about the statutory damages question, and it was sort of all tied up together. And they were dealing with a different service. They were dealing with a settlement service as opposed to mortgage insurance. That's correct, Your Honor. It was actually title insurance, and it was a different kind of illegal arrangement that had been alleged there. Can I ask a question about understanding the scheme that's alleged? Now, the rate for primary mortgage insurance is set by the primary mortgage insurer and reviewed by Pennsylvania, right? I believe so, Your Honor, but I'm not as familiar with those facts. But the question is that one mortgage insurer may have a different filed rate than another, but all customers of that insurer have to pay the same rate, as I understand it. That's my understanding. So if Countrywide told a borrower which mortgage insurer to go to, they would have to pay the same rate. It's possible, isn't it, that another insurer would have had a lower rate? Or am I just... I believe so, Your Honor, but again, I don't know enough about the Pennsylvania Insurance Department's regulation of this. I surely don't. But that kind of would go to a competition or a loss of harm argument. Absolutely. Again, this is a case where what Congress was looking at was the big picture and abuses overall. And that's why the statute was framed in the very clear language that exists. We respectfully ask that the Court not create a circuit split and that the Court reverse the District Court's decision in this case. Thank you. Thank you, Your Honor. Mr. Permit. May it please the Court, my name is David Permit and I'm here representing the Appellees. I want to start off by correcting something that I believe I heard Ms. Cole say about the original statute of RESPA. And I believe that what she said was that until 1983, under RESPA, there was only a private right of action and that the public enforcement of RESPA only came in in the 83 amendments where Congress gave HUD, state AGs, and state insurance commissioners the right to seek injunctive relief. I just want to, if that was the impression, that was the impression left with me, I want to make it clear that from 1974 on, from the inception, this was a publicly enforced statute. Section 8 of RESPA has always had criminal penalties and has always had, enforcement has always been delegated to HUD, state AGs, and the insurance commissioners. But Congress could certainly decide, in its wisdom, that it wanted a joint enforcement mechanism and define an injury as, by saying, if you're, even if you can't point at the system that's corrupted by a lack of competition, by kickbacks, you can put the hurt on the industry by getting three times back what you paid. What's wrong with the reading of the statute that says, that's what the statute says, and Congress has the power to do that? I think absolutely Congress has the power to do that, and we don't contest that. Well, Judge Davis, and Judge Davis said that the statute was clear, right? Judge Giles. Judge Giles. Judge Giles looked at it and said, this is clear. That's what it says. No, I don't, I didn't read Judge Giles' opinion to say that. I read Judge Giles' opinion to say that it was clear that the damages that, in his belief, that the statutory damages set for Section 8 of RESPA was three times the overcharge. Let's look at page 10 of his opinion. He says, taking his true plaintiff's allegation that Countrywide and Balboa engaged in an illegal mortgage insurance kickback or fee-splitting scheme in violation of RESPA, and taking his true plaintiff's allegations that they borrowed money from Countrywide and were required to pay mortgage insurance, plaintiffs have pled a violation of RESPA. And then he says, yeah, but you don't have any standing. How do you square those things up? I square it up because, in addition, standing has a constitutional dimension in addition to a statutory dimension, and what he found is, based on the Constitution, there hadn't been an injury. These plaintiffs paid the exact same rate for mortgage insurance that they would have paid had there not been any reinsurance in place. So we're back to injury in fact? We're back to injury in fact. So I ask again, can't Congress say you are injured by being subjected to the system that operates correctly? They can, and I would contend that they did not do that in Section 8 of RESPA. If they did. If we find that Congress created, in plain language, a private right of action without requiring an overcharge allegation, wouldn't you, aren't you, don't you have to agree that appellants have standing under Section 8 as well as under Article 3? If we find what I said, we could find. Well, I think you could find that, I mean, I think that just is, you know, the way you what you're saying is, if you find that Congress evinced a clear intent to stretch Article 3 standing to its limit and to make a violation of RESPA an injury that is cognizable and for which there's a private right of action, yes, you, I mean, certainly Congress could do that, but I don't see any evidence either in the plain language or in the purpose of RESPA in Section 8 that they did that. Well, you want to, you want to address the language that your, your opponents point to and telling us? In fact, I think Ms. Kulnott five, ten minutes ago said, you can look at the very opening sentence of Section 8 and see that this is Congress' perspective and point that, in fact, these people, anybody subjected to a system where there are kickbacks will have an injury, will have standing. Yeah, and that's exactly my criticism of the statutory, the approach to statutory interpretation that the appellants and the government are taking is that they're looking, they want you to look at the first few words of the statute. Well, which part do you want us looking at? I want you to look at the statute as a whole and I want you to look at the terms of Section 8, which is what Rosenberg versus Ex-Inventor says that you do when you're interpreting, when you're engaged in statutory interpretation. You don't want to look at 8D2, you, you just don't, you really. No, I, I have no problem looking with 8D2 because I think that there's no question, if you look at the language that they're pointing out to in 8D2, the beginning, the initial language in there is the same language that's been in there since 1974 and everybody concedes that at least with respect to Section 8B, that in 1974, prior to the 1983 amendments, there had to be an overcharge for you to have standing to sue under Section 8B. The reason that there had to be an overcharge, and frankly, I think that there had to be an overcharge under 8A, I disagree with the conclusions to the contrary, but the reason that people interpret 8B to require an overcharge is because it included in the damages remedy a split or another, a portion, that was what the damages remedy was, whatever the amount that was split or paid off and it wasn't for services, i.e., the overcharge was what the remedy was. Well, you, you keep talking about what happened in the 70s and the 80s. Right. Why must we look at that? Why don't we look at the statute we have before us? Well, no, I, I didn't get a chance to finish my, my train of thought. I want you to look at the statute that's before you because that same language that courts have universally said requires that you find an overcharge is also located in 8B. So it just begs the question, what is a violation? If you're only liable, if anyone who violates the statute is liable and that same overcharge language is included in the prohibition of 8B, I don't think you can avoid the overcharge issue just because of the change that Congress made to the language of 8D. When you say just because of, isn't that a, that's a pretty big just because of, isn't it? I mean, they took the, the words thing of value and chucked it out of the statute, right? Well, that's a, why doesn't Congress making that very deliberate act tell us something about what Congress means? Well, I, I think they didn't chuck it out of the statute. It's still, the thing of value is still in 8A. I think it doesn't matter for two reasons. Congress oftentimes, as you alluded to in your first question to me, they'll set a statutory measure of damages when perhaps the measure, the economic measurement of damages is not simple or not easily arrived at. Now when they do that, that doesn't mean that they're saying that uninjured plaintiffs have a right to sue. They're just saying that here's what we're going to say is the standard for damages. Well, what, what should, what's the right interpretation of Congress amending the statute to remove the words, the phrase thing of value and the portion split or percentage if it's not to tell us that we're not limited here by overcharges and that Congress wants you not just looking at overcharges? What's the, what's the reasonable explanation for that amendment? The reasonable explanation was what was laid out by the Carter court in the Northern District of Ohio. Now I will acknowledge freely that that was reversed by the Sixth Circuit, but the reasonable, the reasonable explanation, you know, and, and this was because they went to the plaintiff. The reasonable explanation is that 8D2 combined what used to be two separate damages provisions for violations of 8A and 8B. And when you, you can't use the term thing of value in the context of 8B because 8B involves a fee split. Con, you know, conversely, you don't use fee split in terms of 8A. And so what you did was what they did was they combined the two, the two damages provisions into one and made it three times the overcharge. But in 8A, I mean, shall accept any fee kickback or thing of value. You don't need an overcharge for a kickback, do you? I think, yes. I mean, I think that that was the understanding and that's what in the legislative history in 74. I'm not talking legislative history. I'm just talking just. The words. The words. Do you need an overcharge for a kickback? I think that the natural, that if there is a kickback, it is going to result in an overcharge. You require a payment that is not for services and if there's a payment involved that's not for services, then that's, I mean, that's what the standard that HUD, HUD's interpretation in their regulations for what constitutes a kickback says you look at the reasonable value of the goods and services provided and the services furnished and if it's a reasonable value, there's no extra that's a kickback. If there is an overcharge, then they examine for a kickback. But I'd like to do is I'd like to take a look at when I talk about, I haven't had a chance when I talk about the entire statute of rest in Section 8, I'd like to kind of go over some of the factors that I think really do not indicate that there was a right to a kickback free or referral free arrangement settlement that was created by Congress either in 1974 or in 1983. Now, the most important provision which really hasn't been discussed is Section 8C of RESPA. Section 8C of RESPA has always contained exemptions to the prohibition of 8A and 8B. Isn't that nothing more than what Judge Barry said, that's a way of saying we don't want to mess with a system that has no corruption. You're paying for something and you get a value, good, great, we're happy to have you do that. What does 8C do more than say we don't want to mess around with actual value for money transactions? Oh, I think probably what Judge Barry is referring to is 8C2 which talks about the bona fide payments. I think that there's more to Section 8C that does more. No, this is just a safe harbor provision. There's a safe harbor for legitimate things. That's really all it says. I respectfully disagree if you look at 8C3. 8C3 creates an exemption for referral arrangements between real estate brokers and agents. That are not bogus. Well, that's not what it says. What it says is that it creates a specific exemption for a settlement service. And the exemption obviously I think is designed to allow the 6% commission that real estate agents get. But if you look at C4, which was a lot of the discussion there, that allows for an explicit referral arrangement with an affiliated business so long as certain conditions are met. If we read the statute the way you're suggesting, doesn't that just read the word kickback right out of it? You seem to be saying that as long as there's an affiliated arrangement, that's a safe harbor. If that's true, is the argument you're making to us that Congress only wanted to reach out and smack back kickbacks that existed among unaffiliated people but they were happy with kickbacks among affiliated companies? No, that's not what I'm saying at all. What I'm saying is that there was a safe harbor created for referrals to affiliated businesses that meet certain conditions. And aren't those conditions just the ones that Judge Berry's been pointing to? In other words, that this was a safe harbor for legitimate value for money transactions. And outside that, as long as there was some kind of a kickback going on, Congress wanted to get at it. Well, I would say that really what it's a safe harbor for is that really it kind of labels and also defines some of the referral arrangements that Congress did not find to lead to overcharges or tend to increase the cost of settlement services. And it demonstrates that that was their purpose in passing RESPA, was to address the types of referral arrangements that didn't increase the cost of services. So I put it to you, aren't you reading kickback out of it? You keep going back to overcharges. What do we make of the word kickback? A kickback does not necessarily result in an overcharge. Customer may never see the effect of that. But there was a transaction where the referring business passed money back to make sure that referrals would keep coming. What are we to make of the word kickback in this statute if we read the statute the way you're suggesting? I don't think that 8C, I don't think that 8C reads kickback out of the statute at all. It defines, it defines what, it defines either certain exemptions for types of arrangements or, and also 8C2 I think defines what, it's really 8C2 is really what when you read together with 8A and 8B defines what a kickback is. Okay. In addition to 8C, which I think gives you statutory exemptions and to me is entirely inconsistent with a right to a settlement that's free of referral arrangements if you're not injured, there's also the damages provision if you do look at 8D2. 8D2 only provides a private right of action to the person who's charged for the settlement service involved in the violation. That is the person who could be overcharged. Now in a settlement, in a settlement there are numerous parties all of whom could pay for the settlement service. You generally have a borrower, you have a lender, you may have a seller in the real, if it's a sale that's involved, you may have a real estate agent, you may have a mortgage broker, any of which may pay for closing costs. Congress didn't say that anyone who was involved in a settlement that may involve a referral free arrangement has a private right of action to sue. Only the people who were involved, only the person who was charged for the settlement service involved in the violation, the person who could have been injured by the overcharge. And so I think it's impossible to really read the right that they allege that Congress created into the statute when you look at the plain language of 8D2. I don't understand the argument. Supposing there's just a violation with reference to getting title insurance or something. That's all Congress is saying. The person who violates the prohibition is the one who is liable. Not everybody involved. I was referring to who they're liable to. Under 8D2 they're only liable to the party who paid for the title insurance. And so therefore a borrower may have been involved in a settlement that involved such an arrangement. But if the seller paid for the title insurance, the borrower has no private right of action and no right to enforce RESPA under its plain meaning. Doesn't this go back to the injury in fact question? Absolutely. It goes back to the injury in fact and there's really no difference between the parties that there is an injury in fact required. And really what the injury in fact requirement is constitutionally is there has to be an invasion of a legally protected interest. How do you distinguish Havens? How do I distinguish Havens? Well Havens, prior to Havens being decided, the Supreme Court had already decided that the Fair Housing Act, there was a clear intent that Congress had shown to stretch Article 3 standing to its constitutional maxima. Havens also under the interest that was being protected wasn't an economic interest there. It was the right to get information and to get accurate information and in fact the white tester involved in Havens who was truthfully told that there were vacancies had his case tossed out for lack of standing. I think that the other thing and this is some of the 1983 cases that I cited in my brief is that when you look to how the Supreme Court and how this court interpret whether Congress intended to create personal rights in a statute, what those cases look to is they look to issues like is there a private attorney general system set up or is the language couch in rights creating language. Are you going back to the Gonzaga line of cases now, the Gonzaga line of cases where we have to determine whether there's an implied private right of action? Not necessarily just an implied right of action. Gonzaga certainly was one of the cases I cited. You cited very prominently and you spent several pages talking about those cases. But there's an expressed right of action here. Isn't there? I understand that and the reason that and perhaps it wasn't clear enough, the reason I looked to Gonzaga and some of the 1983 cases is that the issue, especially in 1983 is not whether there's a cause of action because 1983 provides a cause of action. The issue that courts often grapple with is did Congress in passing this law, it's not enough that there be a law that's violated, there has to be a right violated under 1983. It's in this statute. We don't have to guess whether Congress wanted a private enforcement mechanism here. It's in hoc verba right here, isn't it? Yes. But they're going beyond and typically the way you read a statute is that you require an injury. But they're going beyond saying that Congress gave a private right of action. And what they're saying is that Congress in RESPA created a right to sue even if you weren't injured. That you were given standard for participating in the settlement. Yeah. I took their argument to be not that you can sue if you're not injured, but that Congress has defined the injury to be you are subjected to a system in which competition is unlawfully suppressed. That's what I understood. Maybe they'll correct me in rebuttal if I got it wrong. But not that you can sue if you've got no injury, but that if you're in the system participating and there's a kickback or something like that going on, by definition you've been injured. That's the argument that you have to tackle head on. Yeah. And I don't think that Congress, I don't see the intent of Congress to rise to the level where you can raise a generalized grievance like that. I think that when you look at the statute you have to assume that Congress intended to give injured parties the right to a grievance. And until you see some sort of indication in Congress that there actually is a right to be created, and they in all of the cases refer to it as a right of a settlement free of the taint of referral fee arrangements. I don't see the intent of Congress in the overall structure of the statute. Particularly when you have a public enforcement scheme as well. And that type of generalized grievance can be enforced by HUD, can be enforced by state insurance commissioners which is why I think the right doctrine is consistent with RESPA and can be enforced by state AGs. Let me ask this as a hypothetical. Is there, when you say you don't see it in here okay, but you're not contending are you that Congress had it wanted to do that, could in fact set up a system where the injury is just that. To be free of the taint of a corrupt settlement, real estate settlement system and therefore Congress could empower private citizens with the right of action to come to federal court and complain. You're not saying that as a matter of constitutional law, Congress couldn't do that, are you? I'm out of time, can I answer that question very briefly? Of course. No, I'm not saying that. What I'm saying is that whether Congress did so as a matter of congressional intent and that if you look at the structure and text of RESPA as a whole, Congress didn't intend to do so here. Thank you. Rebuttal? Thank you, Your Honor. Just a couple of quick things. One I just want to note that one of the things that Mr. Perman seemed to say was that prior to 1983 that everyone agreed that an overcharge is necessary at least for 8B violations. As is laid out in our brief, that's not the position of appellants. I understand it's the position of HUD. I will say that HUD regulation makes it clear that the, I'll just read this very quickly, that the fact that a transfer of thing of value does not result in an increase in any charge made by the person given the thing of value is irrelevant to determining whether the act is prohibited. Also very quickly, going back to the competition question, for the case here, and we've put this document before the Court, the private mortgage insurance industry is dominated by a very small number of players. It's our contention that defendants have made arrangements with each of these primary mortgage insurance providers and that they are allocated to consumers as they come in to the lender on a rotation basis. On the condition they refer to Balboa. That's exactly right. I'm not sure how you can define the benefits of competition when you're choosing when you're providing people private mortgage insurance on a rotating basis, not looking at price, not looking at service, not looking at product differentiation. And the last thing I'll say is that once again, I said this earlier and I apologize, and Judge Jordan, I agree that's exactly what our claim is, as you had stated earlier, that the harm is being subject to a kickback-tainted, not referral-tainted, a kickback-tainted settlement. In other words, a settlement tainted by the referral of business just for the referral of business for no other justification. And that's really what this case is about. And if you read defendants' briefs, deep in the briefs they agree that if the case goes forward under 8C2, which is what they may I finish? Yeah. Under 8C2 the safe harbor, if the payments made, if the insurance premium ceded to the reinsurer are appropriate, if they were for real reinsurance, commensurate, not a little bit, but if the value were even then it's true, they'll have the benefit under a judgment of the 8C2 safe harbor. But if it turns out that the payment, not the payment that my plaintiffs paid the PMI providers, but the kickback, if the referral of business, then my, the plaintiffs will be classed. But that's the merits determination. That's exactly right. And Mr. Perman says so in his brief. If that's what the case goes forward, that's the determination the court's going to have to make. Unless there's any other questions. Thank you, Your Honor. Thank you. We'll take the case under advisement.